[No. G036939. Fourth Dist., Div. Three. Dec. 6, 2007.]

BRIAN PEREZ, Plaintiff and Appellant, v.
ULINE, INC., et al., Defendants and Respondents.

COUNSEL

Stanley M. Becker; Shuff Law Firm and John J. Gulino for Plaintiff and Appellant.

David G. Freedman for Defendants and Respondents.

OPINION

**RYLAARSDAM, J.**—Plaintiff Brian Perez appeals from a judgment on his complaint against defendants Uline, Inc., Patrick Shea, Mike Donaghy, and Salvador Alcaraz for wrongful termination, breach of oral contract, failure to pay overtime wages in violation of the statute, and defamation, claiming the court erred in enforcing a severance agreement that was against public policy contained in, among other things, the Uniformed Services Employment and Reemployment Rights Act of 1994 (38 U.S.C. § 4301 et seq.; USERRA), and obtained under duress. We determine that because USERRA directs that its provisions may not be eliminated by a contract, the release of rights in the severance agreement may not be enforced to the extent it deals with the

claims of termination based on plaintiff's membership in the military or his military service. As to plaintiff's other claims for defamation and overtime payments, there is no basis to invalidate the release and we affirm.

## FACTS AND PROCEDURAL HISTORY

Defendant employed plaintiff, a captain in the United States Marine Corps Reserves. In March 2003, on the day he returned to work after duty with the Reserves, plaintiff was told defendant no longer needed his services. Defendant presented him with a one-and-a-half-page "Severance Agreement and Release." (Capitalization and underscoring omitted.) It provided that defendant would pay plaintiff six weeks' salary in exchange for plaintiff releasing defendant from all claims, which were set out in a comprehensive but nonexclusive laundry list of named federal and state laws, and "any other federal or state law, statute, decision, order, policy or regulation establishing or relating to claims or rights of employees . . . , and any and all claims in tort or contract, based upon public policy, and any and all claims alleging . . . defamation . . . or wrongful discharge."

The agreement stated that defendant had advised plaintiff "to consult with an advisor of [his] choice prior to executing" it. It gave plaintiff seven days to decide whether or not to accept the terms and provided that if he did not, the offer was "null and void." (Boldface omitted.)

Plaintiff, a college graduate who reads and speaks English fluently, read the agreement more than once. He believed it was "entirely up to [him]" whether to execute the agreement. He knew that if he did not sign it within the time limit he would not receive severance pay; he unsuccessfully negotiated with defendant to obtain more money. Although he did not understand the meaning of "advisor," he assumed it might have been a lawyer. He thought about talking to a lawyer before he signed the agreement but did not remember if he actually did. On the last day of the offer, plaintiff signed the agreement and was paid according to its terms.

Subsequently, he sued defendant and three of its employees. He claimed pretextual wrongful termination based on false negative performance evaluations, alleging he "was removed from a position which he had obviously earned solely because he was apt to be called to active duty and was, in fact, absent for one week due to a military obligation." He pleaded that his

termination was in violation of federal and state statutes prohibiting termination of members of the armed services. These included sections of USERRA. The complaint also asserted a cause of action for breach of oral employment contract based on his military service.

In addition he sued for defamation based on negative performance evaluations and failure to pay overtime in violation of the Labor Code. Defendant filed a general denial and several affirmative defenses, including a claim of release based on plaintiff's execution of the severance agreement.

The parties stipulated to try the affirmative defense based on the release first. Thereafter, the court ruled in favor of defendants, finding the agreement was a release of all of plaintiff's claims. Its statement of decision provided that plaintiff "knew that by signing the [agreement] he was giving up all claims related to his employment and all the laws recit[ed] in the agreement." The court also found plaintiff had sufficient time to "make a reasoned decision" whether he wanted to accept the offer and that there was no evidence of "fraud, deception, duress, or undue influence . . ." causing him to sign the release. Although the individual defendants apparently did not answer the complaint, the court found in their favor and included them in the judgment.

## DISCUSSION

1. *Wrongful Termination Based on Alleged Violation of USERRA*

In support of his second cause of action for common law wrongful termination based on violation of public policy and his third cause of action for breach of oral employment contract plaintiff relied on 38 United States Code section 4301. It provides, "(a) The purposes of this chapter are—[¶] . . . [¶] (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and [¶] (3) to prohibit discrimination against persons because of their service in the uniformed services." (38 U.S.C. § 4301(a).) Section 4311(a) requires that "[a] person who is a member of . . . a uniformed service shall not be denied . . . reemployment [or] retention in employment . . . on the basis of that membership . . . [or] performance of service . . . ."

Plaintiff contends he was terminated "because he was apt to be called to active duty and was, in fact, absent for one week due to a military obligation." He argues the waiver of all claims in the release violated 38 United States Code section 4302(b), which states: "This chapter supersedes

any State law . . . contract, agreement, . . . or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter . . . ." We agree as far as it applies to the causes of action for wrongful termination and breach of oral employment contract.

■ The statute plainly states that a contract may not limit the protections of USERRA, which prohibits termination of employment based on membership in the military or performance of military service. Thus, defendant's assertion that the agreement waived the protections of USERRA cannot be sustained. We decide this without making any determination as to whether plaintiff was actually terminated because of his military service. This was not a question presented to the court during the trial of the issue of the release.

In his supplemental brief, plaintiff points out that in an employee's action against a private employer under USERRA the United States district courts have jurisdiction. (38 U.S.C. § 4323(b)(3).) He argues defendants never objected to jurisdiction in the superior court. This is another issue we do not decide.

## 2. Civil Code Section 1542

Plaintiff maintains that the agreement cannot be enforced because it did not contain a waiver of Civil Code section 1542. That section provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

The agreement stated that plaintiff waived "all claims existing as of the date [he] signs this [a]greement arising from or relating to [his] employment or the termination of his[] employment and any claims which arise under the common law of contract, implied contract, tort, public policy, or statute, such as [claims under specified legislative enactments], . . . or any other federal or state law, statute, decision, order, policy or regulation establishing or relating to claims or rights of employees, including, but not limited to, . . . any and all claims in tort or contract, based upon public policy, and any and all claims alleging breach of an express or implied, or oral or written, contract, . . . or alleging misrepresentation, defamation, interference with contract, . . . or wrongful discharge."

■ In *Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353 [53 Cal.Rptr.2d 481], the plaintiff, laid off by the defendant, signed a release in exchange for severance pay. In the document the plaintiff agreed he was releasing the defendant from all claims, known or unknown, that he had

currently or in the past, or that he may have in the future. The agreement did not refer to Civil Code section 1542. In upholding the validity of the release the court held that " '[r]elease, indemnity and similar exculpatory provisions are binding on the signatories and enforceable so long as they are . . . "clear, explicit and comprehensible in each [of their] essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement." ' [Citation.]" (*Skrbina v. Fleming Companies, supra,* 45 Cal.App.4th at p. 1368.)

■ That is the case here. Plaintiff testified he understood he was releasing claims arising under all statutes the agreement referred to, even those he did not understand. This knowledge is sufficient to withstand the provisions of Civil Code section 1542. Nothing in that statute requires that it be designated in the release or that a party specifically waive its provisions. ■ While it might have been more comprehensive to have a reference to Civil Code section 1542 in the release, " 'To be effective, a release need not achieve perfection . . . .' [Citation.]" (*Skrbina v. Fleming Companies, supra,* 45 Cal.App.4th at p. 1368.) Thus, as to defamation and the overtime claim, the release is enforceable.

### 3. *Economic Duress and Unconscionability*

Plaintiff also asserts his agreement was obtained through economic duress because defendants knew, but failed to tell him, the reason for his termination was wrongful, thereby "depriving him of future income by false representations." He also claims economic duress because he was in the position of receiving no money if he did not accept the agreement or only a small amount if he did accept, without knowing why he was being discharged. This is not sufficient to show economic duress.

■ The doctrine of economic duress "may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure. [Citations.]" (*Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 1158 [204 Cal.Rptr. 86].) But courts "are reluctant to set aside settlements and will apply 'economic duress' only in limited circumstances and as a 'last resort.' [Citation.]" (*San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1058 [37 Cal.Rptr.2d 501].) Required criteria that must be proven to invalidate a settlement agreement are: "(1) the debtor knew there was no legitimate dispute and that it was liable for the full amount; (2) the debtor nevertheless refused in bad faith to pay and thereby created the economic duress of imminent bankruptcy; (3) the debtor, knowing the vulnerability its own bad faith had

created, used the situation to escape an acknowledged debt; and (4) the creditor was forced to accept an inequitably low amount. [Citation.]" (*Ibid.*)

The record reflects these factors were not satisfied. There is no evidence defendant knew it owed plaintiff money in addition to what was paid and used the agreement to avoid paying "an acknowledged debt." Nor is there evidence plaintiff was on the verge of bankruptcy, the six weeks' salary was inequitably low, or plaintiff was forced to accept the settlement amount to stave off financial disaster. That plaintiff did not have a job and needed the money offered under the agreement to pay his bills does not equate to economic duress. The same could be said of almost any case where an employee is discharged and offered severance pay. Thus the court did not err when it found there was no economic duress.

■  We reject plaintiff's related argument that the agreement is unenforceable as an unconscionable adhesion contract. He claims he was surprised when he was presented with a "take it or leave it" agreement when he expected he would be returning to work. He also asserts the terms were unreasonable and "overly harsh," leaving him no alternative but to take the money even though defendant was required under federal law to allow him to return to work.

" '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669], italics omitted.)

With the exception of the release as it affects plaintiff's rights under USERRA, which we have already determined is unenforceable, these criteria are not supported by the record. The fact that plaintiff did not expect to be terminated and presented with a release agreement is not the surprise described by *Armendariz*. Nor is there any evidence the terms of the agreement were too harsh or one-sided. Thus this claim fails as to the defamation and overtime claims.

## DISPOSITION

The judgment is reversed to the extent it enforces the release as to the wrongful termination claim and breach of contract claims. The judgment is affirmed as to the defamation and overtime claims. The parties shall bear their own costs on appeal.

Sills, P. J., and Ikola, J., concurred.