Filed 12/18/13  Morris Company v. Boman CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| MORRIS COMPANY, LLC, | |
| Plaintiff and Appellant, | E055795 |
| v. | (Super.Ct.No. RIC1107675) |
| TIMOTHY J. BOMAN, | O P I N I O N |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Craig Riemer, Judge.

Affirmed.

Edward J. Horowitz; and Jeffrey B. Singer for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Ernest Slome; Law Offices of

John P. O'Connell and John P. O'Connell for Defendant and Respondent.

### I.  INTRODUCTION

On January 27, 2011, plaintiff and appellant, Morris Company, LLC (Morris),

sued defendant and respondent, Timothy J. Boman (Boman), for breach of contract.  The

1

contract was alleged to be a settlement agreement and a stipulation for entry of judgment dated June 23, 2009. The amount sought was $768,093, plus interest and attorney fees. Boman filed an answer asserting that the debt had been extinguished by a release signed by Morris on May 24, 2010.

On August 2, 2011, Boman filed a motion for summary judgment. The motion was brought on the ground that Civil Code section 1541[1] requires dismissal when the cause of action has been extinguished by a release.

In Morris's response to the motion for summary judgment, it contended the motion was procedurally defective, and that the motion should be denied because there were triable issues of material fact relative to the release being signed under economic duress.

On December 29, 2011, the trial court found that Morris's assertion of an economic duress defense to the enforcement of the release was not supported by evidence showing the existence of a triable issue of fact. Accordingly, it granted the motion for summary judgment. Morris appeals. We affirm the trial court's grant of summary judgment.

---

[1] Civil Code section 1541 provides: "An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration."

## II. FACTS

In 2004, Morris and Boman formed a partnership to acquire a parcel of property in Murrieta.[2] Each partner contributed $1 million toward the purchase price. Downey Savings and Loan provided the remaining purchase money by way of a $3.7 million loan. Each party had a 50 percent interest, but Morris advanced additional capital and paid additional operating costs on Boman's behalf.

In 2006, Boman signed a promissory note for $410,000 to repay Morris for the advances. In 2008, the property was listed for sale. No acceptable offer was received. In 2009, Morris filed suit against Boman to recover on the note, plus an additional $305,000, for a total of $715,000.

The litigation was settled in June 2009, by execution of a settlement agreement.[3] Under the agreement, Boman agreed that he owed Morris $768,093, plus interest. The settlement agreement provided that the principal and all accrued interest would be paid to Morris upon the sale of the subject property, through sale escrow. It further provided that if the sale proceeds were insufficient to pay the amount owed, Boman would have five years to pay off the balance. Lastly, the parties would cooperate in the listing and sale of

---

[2] The terms of the partnership are defined in an "Operating Agreement" dated October 15, 2004. Although the entities referred to in the Operating Agreement were apparently never formed, and title to the property was taken in their individual names, the parties agree that they entered into a 50/50 partnership on the terms and conditions stated in the Operating Agreement.

[3] Boman's answer admitted that the allegations of an agreement, consisting of the settlement agreement and the stipulation for entry of judgment, are true.

the property and sign all necessary documents to carry out the intent of the agreement. At the same time, the parties signed a stipulation for entry of judgment containing the same basic provisions. The stipulation, however, was not filed with the court and no judgment was entered.

On March 1, 2010, the Downey Savings and Loan loan came due. The bank demanded a $700,000 principal payment, plus a $15,000 fee, to avert foreclosure for six months. If not paid or refinanced by March 1, the loan would be in default, and the bank threatened to commence foreclosure proceedings after March 1, 2010.

Two weeks before March 1, 2010, Morris obtained an offer for the property. The offer price would allow repayment of the bank loan, but would not repay all of Boman's debt to Morris. Boman refused to accept the offer unless Morris released him from his $768,093 debt. On March 2, 2010, Morris signed the release.

The release stated: "Morris Company, LLC, based upon representation of financial insolvency by Timothy Boman, hereby releases him of all debts owed to Morris Co, LLC relating to the vacant land jointly invested in by both parties located at 35070 Antelope Rd., Murrieta, CA. [¶] It is mutually agreed upon that Timothy Boman shall receive no proceeds, commissions, refunds nor any other disbursements from Morris Co, LLC, nor any other party, in relation to said land investment. [¶] This agreement to take effect upon close of escrow and recordation of grant deed for the sale of said land to Makena Consulting Group."

4

On April 14, 2010, Mary Morris, as trustee of the J. Arthur Morris Family Trust, not a party to the agreement between Morris and Boman, wired to the lender $715,024.90; this amount brought the payments on the loan current and paid for an extension of the loan.

Before the sale closed, Boman drafted a second release, dated May 24, 2010, which was signed by Morris. The second release provided that the stipulation for entry of judgment in the underlying case was satisfied and paid in full. It also provided that the agreement would take effect upon the close of escrow for the sale of the land to any buyer.[4]

A grant deed for the property was signed on May 24, 1010, and recorded on June 2, the date that escrow closed. From the sales price, the J. Arthur Morris Family Trust was repaid $500,000. Rather than take the money, the trust "chose to invest that money with the Buyer, in the property . . . ."

---

[4] Since this release appears to be the operative document, we quote it in full: "Morris Company, LLC, and individual Morris family members hereby releases [*sic*] Timothy J. Boman of all debts owed to Morris Co., LLC relating to the vacant land jointly invested in by both parties located at 35070 Antelope Rd., Murrieta, CA. Specifically[,] the Stipulation For Entry Of Judgment, case No. VC052864 will be considered satisfied and paid in full. [¶] It is mutually agreed upon that Timothy Boman shall receive no proceeds or any other disbursements from Morris Co. LLC, nor any other party, in relation to said land investment. [¶] All signed copies of the Stipulation Agreement will be turned over to Timothy Boman at close of escrow. [¶] This agreement is to take effect upon close of escrow for the said land to any buyer." Despite the references to an agreement, the release is not signed by Boman. There is an issue about the validity of the release, since it was not an agreement signed by both parties, as required by section 15 of the settlement agreement.

5

Thereafter, Morris filed a motion to enforce the previously entered stipulation for entry of judgment. Finding it had no jurisdiction to enter judgment, a Los Angeles trial court denied Morris's motion. The present action was filed a week later.

## III. DISCUSSION

### A. *Standard of Review*

The applicable standard of review is thoroughly stated in *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89: "Summary judgment provides 'courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' [Citation.] A summary judgment motion 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] 'The pleadings determine the issues to be addressed by a summary judgment motion [citation], and the declarations filed in connection with such motion "must be directed to the issues raised by the pleadings."' [Citation.] [¶] The moving party 'bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.' [Citations.] Defendants moving for summary judgment . . . meet this burden by presenting evidence demonstrating that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to the action. [Citations.] Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists with regard

6

to that cause of action or defense. [Citations.] Material facts are those that relate to the issues in the case as framed by the pleadings. [Citation.]" (*Id.* at p. 100.)

Here, while neither the complaint nor answer directly reference or raise the issue of "economic duress," the issue is nonetheless within the purview of the pleadings. The complaint filed by Morris on January 27, 2011, alleged a contract between the parties consisting of a settlement agreement and a stipulation for entry of judgment dated June 23, 2009. Those documents were attached to the complaint. It is further alleged that Boman breached the contract on July 2, 2010, by failing to pay Morris the principal sum of $768,093, amortized over five years in monthly installments.

Boman filed an answer admitting the contract but denying the other allegations. As an affirmative defense, Boman alleged that "[a] written modification to the June 23, 2009 agreement was signed by the parties on March 2, 2010, releasing [Boman] from performing under the terms of [the] contract." A second affirmative defense alleged: "A release and satisfaction of any and all debt owed by [Boman] to [Morris] . . . was signed and notarized by [Morris] on May 24, 2010."

The issue of economic duress is being raised by Morris for the first time in its opposition to the motion for summary judgment; it is being raised as a defense to the enforceability of the release—in essence, a defense to a defense. In addressing a similar issue, wherein "unconscionability" was raised within the context of the enforceability of a release, the court stated in *Westlye v. Look Sports, Inc*. (1993) 17 Cal.App.4th 1715: "The scope of issues material in a summary adjudication motion are delimited by the

pleadings, which are supposed to aver the ultimate facts which constitute the cause of action or defense thereto. [Citations.] . . . '"[M]ateriality depends on the *issues in the case*; evidence which does not relate to a matter in issue is *immaterial*." [Citation.] "Materiality, i.e., what matters are in issue, 'is determined mainly by the pleadings . . . and the substantive law relating to the particular kind of case. [Citations.]'" [Citation.] Therefore, in alleging "material facts" which the . . . party contends are undisputed, it is incumbent upon the . . . party to show the materiality of the facts by identifying, in the summary judgment pleadings, how the undisputed facts apply to specific issues raised by the complaint or answer . . . .' [Citation.]" (*Id.* at p. 1738.) Here, the issue of "economic duress" while being raised for the first time by Morris in its opposition to the motion for summary judgment, is clearly material to the issues in the case.

In that it is being raised by Morris in its opposition to the motion for summary judgment, it is Morris who bears the burden of presenting evidence sufficient to raise a triable issue of material fact on the issue. (See *Westlye v. Look Sports, Inc., supra,* 17 Cal.App.4th at pp. 1739-1740.)

"In ruling on the motion, the court must consider the evidence and inferences reasonably drawn from the evidence in the light most favorable to the party opposing the motion. [Citation.] [¶] We review an order granting summary judgment de novo, considering all the evidence set forth in the moving and opposition papers, except that to which objections have been made and sustained. [Citations.] In undertaking our independent review, we apply the same three-step analysis as the trial court. First, we

8

identify the issues framed by the pleadings. Next, we determine whether the moving

party has established facts justifying judgment in its favor. Finally, if the moving party

has carried its initial burden, we decide whether the opposing party has demonstrated the

existence of a triable issue of material fact. [Citations.] 'We need not defer to the trial

court and are not bound by the reasons for [its] summary judgment ruling; we review the

ruling of the trial court, not its rationale.' [Citation.]" (*Lona v. Citibank, N.A., supra,*

202 Cal.App.4th at pp. 100-101; see also Code Civ. Proc., § 437c, subd. (c); *Aguilar v.*

*Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843; *Hamburg v. Wal-Mart Stores, Inc.*

(2004) 116 Cal.App.4th 497, 502-503.) "We liberally construe the evidence in support of

the party opposing summary judgment and resolve doubts concerning the evidence in

favor of that party. [Citation.]" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028,

1037.)

B. *Analysis*

The sole issue presented is whether Morris has set forth sufficient facts to create a

triable issue of material fact regarding the economic duress defense.

In the leading case of *Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984)

157 Cal.App.3d 1154, the court affirmed a trial court's decision that a settlement

agreement and release in a commercial dispute were the products of economic distress.

(*Id.* at pp. 1155-1156.) As stated by the court: "'At the outset it is helpful to

acknowledge the various policy considerations which are involved in cases involving

economic duress. Typically, those claiming such coercion are attempting to avoid the

9

consequences of a modification of an original contract or of a settlement and release agreement. On the one hand, courts are reluctant to set aside agreements because of the notion of freedom of contract and because of the desirability of having private dispute resolutions be final. On the other hand, there is an increasing recognition of the law's role in correcting inequitable or unequal exchanges between parties of disproportionate bargaining power and a greater willingness to not enforce agreements which were entered into under coercive circumstances.' [Citation.]

"California courts have recognized the economic duress doctrine in private sector cases for at least 50 years. [Citation.] The doctrine is equitably based [citation] and represents 'but an expansion by courts of equity of the old common-law doctrine of duress.' [Citation.] As it has evolved to the present day, the economic duress doctrine is not limited by early statutory and judicial expressions requiring an unlawful act in the nature of a tort or a crime. [Citations.] Instead, *the doctrine now may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.* [*Citations.*] *The assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment may constitute a wrongful act for purposes of the economic duress doctrine.* [*Citations.*] *Further, a reasonably prudent person subject to such an act may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin.* [Citations.]

"The underlying concern of the economic duress doctrine is the enforcement in the marketplace of certain minimal standards of business ethics. Hard bargaining, 'efficient' breaches and reasonable settlements of good faith disputes are all acceptable, even desirable, in our economic system. That system can be viewed as a game in which everybody wins, to one degree or another, so long as everyone plays by the common rules. Those rules are not limited to precepts of rationality and self-interest. They include equitable notions of fairness and propriety which preclude the wrongful exploitation of business exigencies to obtain disproportionate exchanges of value. Such exchanges make a mockery of freedom of contract and undermine the proper functioning of our economic system. The economic duress doctrine serves as a last resort to correct these aberrations when conventional alternatives and remedies are unavailing. The necessity for the doctrine in cases such as this has been graphically described: 'Nowadays, a wait of even a few weeks in collecting on a contract claim is sometimes serious or fatal for an enterprise at a crisis in its history. The business of a creditor in financial straits is at the mercy of an unscrupulous debtor, who need only suggest that if the creditor does not care to settle on the debtor's own hard terms, he can sue. This situation, in which promptness in payment is vastly more important than even approximate justice in the settlement terms, is too common in modern business relations to be ignored by society and the courts.' [Citation.]" (*Id.* at pp. 1158-1159, italics added, fn. omitted; see *Perez v. Uline, Inc.* (2007) 157 Cal.App.4th 953, 959-960; *Chan v. Lund* (2010) 188 Cal.App.4th 1159, 1173-1174.)

11

Here, the trial court implicitly found that Boman met his initial burden of production relative to the fact that Morris released him from the $768,093 debt. It is a conclusion which, upon our de novo review of the record, we agree. As such, the burden shifted to Morris to demonstrate a triable issue of fact on the issue of economic duress. On this issue, the evidence submitted by Morris consists of the declarations of Michael Morris with attachments and the declaration of Mary Morris. We now look at the *Rich & Whillock, Inc. v. Ashton Development, Inc.* considerations.

As to the initial factor that Boman knew there was no legitimate dispute and that he was liable for the full amount, Morris clearly presented sufficient evidence to create a triable issue of fact. By way of his declaration, he stated that he and Boman were 50/50 owners, he paid Boman's share of expenses, Boman signed a promissory note in 2006 for $410,000, in February 2009, Morris sued Boman on the promissory note, and Boman signed a settlement agreement and stipulation to enter judgment for $768,093. Further, in his answer Boman admitted that the settlement agreement was a contract and he acknowledged in the settlement agreement that he owed Morris $768,093, plus interest.

As to the element that Boman wrongfully or in bad faith refused to pay the debt, we do not believe Morris's opposition set forth sufficient facts to create a triable issue of fact. With this said, however, we conclude the evidence presented by Morris in conjunction with the settlement agreement submitted by Boman does create a triable issue of fact as to whether Boman's refusal to "execute all necessary documents to carry

12

out the intent of this Agreement" and "cooperate in the listing and sale of the property" was in bad faith.

As to the issue of Boman engaging in conduct which was wrongful or done in bad faith, Boman argues that he had the legal right to declare bankruptcy and/or refuse to accept an offer of sale which he felt inadequate. Relying on *London Homes, Inc. v. Korn* (1965) 234 Cal.App.2d 233 and *Konecko v. Konecko* (1958) 164 Cal.App.2d 249, he submits that the exercise of or the threat to exercise a legal right cannot be economic duress. "The exercise of a legal right does not constitute unlawful duress or compulsion under the law of this state." (*Goldstone-Tobias Agency, Inc. v. Barbroo Enterprises Productions, Inc.* (1965) 237 Cal.App.2d 720, 724.)

Morris, on the other hand, points out that the court in *Rich & Whillock, Inc. v. Ashton Development, Inc., supra,* 157 Cal.App.3d at page 1159 states: "The assertion of . . . a bad faith threat to breach a contract or to withhold a payment may constitute a wrongful act for purposes of the economic duress doctrine. [Citations.]" (See *Perez v. Uline, Inc., supra,* 157 Cal.App.4th at pp. 959-960.)

We agree with Morris. While a party may have a legal right to engage in conduct, if it does so with the wrongful intent to deprive another person of rights which have been previously acknowledged by said party, it may be deemed sufficient to support an argument of economic distress.

In determining whether a triable issue of fact exists, we look first to the evidence submitted by Morris to support the notion that Boman's conduct was done in bad faith.

13

On this issue, Morris submitted the following evidence: "[Boman] knowingly took unfair advantage of the precarious financial situation and the small window of opportunity we had to extricate ourselves from it." (Objected to by Boman as being an impermissible opinion and legal conclusion.) "On February 22, 2010, Boman threatened Morris Co., in writing that he would declare bankruptcy if it did not release him from his debt to it. Boman made this threat after we had received the offer to purchase the property . . . ." (Objected to by Boman as lacking foundation and personal knowledge.) "Boman also threatened Morris Co., in writing, that if he filed bankruptcy any deficiency on the loan to U.S. Bank would be borne solely by Morris Co." (Objected to by Boman as lacking foundation and personal knowledge, as well as being a legal conclusion.) "When I informed Boman of the offer he refused to accept it as it would not pay off his $768,093 (plus interest) debt to the Morris Co." "Boman told me that the only way he would accept the offer I had obtained and sign the necessary sale paperwork was if the Morris Co. released him of his debt to it." "The property had been on the market for many months with no acceptable offers received by us."

While the trial court did not rule on the above noted objections, we find them well taken. (See *Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 535.)

It is well settled that "[p]ersonal knowledge and competency must be shown in the supporting and opposing affidavits and declarations. [Citations.] The affidavits must cite evidentiary facts, not legal conclusions or 'ultimate' facts. [Citation.] [¶] Matters which would be excluded under the rules of evidence if proffered by a witness in a trial as . . .

14

conclusions or impermissible opinions, must be disregarded in supporting affidavits. [Citation.]" (*Hayman v. Block* (1986) 176 Cal.App.3d 629, 638-639; see *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 529.)

Here, Morris declared that "[Boman] *knowingly took unfair advantage of* the precarious financial situation and the small window of opportunity we had to extricate ourselves from it." (Italics added.) "Our appellate courts have consistently held that a statement of someone else's intent, as contrasted with a statement of one's own intent, is a mere conclusion of law. [Citations.] . . . [O]ur Supreme Court [has] reversed a judgment based upon testimony of someone else's intent because such testimony 'unsupported by any facts tending to show that he knew what their intention was' [citation] was not competent to support a finding. . . . In fact, all statements in opposition to a motion for summary judgment which are incompetent as evidence must be disregarded." (*Hoover Community Hotel Development Corp. v. Thomson* (1985) 167 Cal.App.3d 1130, 1136.) Here, Morris's statement that Boman "knowingly took unfair advantage" is nothing more than a conclusion as to Boman's intent in engaging in the conduct. It is incompetent evidence in the absence of some factual basis. Morris does not provide that factual basis.

Next, Morris declares: "On February 22, 2010, Boman *threatened* Morris Co., in writing that he would declare bankruptcy if it did not release him from his debt to it. Boman made this threat <u>after</u> we had received the offer to purchase the property . . . ." (Italics added.) "Boman also *threatened* Morris Co., in writing, that if he filed

15

bankruptcy any deficiency on the loan to U.S. Bank would be borne solely by Morris Co." (Italics added.) Such statements in a declaration are similar to those found inadmissible in *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, wherein the court stated: "[T]he sole evidence of the City's abandonment or unreasonable failure to negotiate is in Tuchscher's declaration, in which he avers as a result of the purported communications between respondents, Lennar and the City '*and the heavy pressure wrongfully and greedily exerted by Malcolm* . . . let the [negotiating agreement] expire *without good faith* negotiations . . . .'" (*Id.* at p. 1240, italics added.) Morris's averments that Boman "threatened" a course of conduct is equally unavailing. It is nothing more than an argumentative conclusory statement with no evidentiary support.

As for the portions of the declaration which reference various statements wherein Boman indicated he would declare bankruptcy, there have been no facts presented to support the notion that the statement was made in bad faith. Morris presented no evidence that Boman did not qualify for bankruptcy nor that he, in fact, would not have declared bankruptcy.

Thus, what is left of Morris's declaration which, in theory, goes to the bad faith nature of Boman's conduct, is: "When I informed Boman of the offer he refused to accept it as it would not pay off his $768,093 (plus interest) debt to the Morris Co."; "Boman told me that the only way he would accept the offer I had obtained and sign the necessary sale paperwork was if the Morris Co. released him of his debt to it"; and "[t]he

16

property had been on the market for many months with no acceptable offers received by us." These facts simply do not create a triable issue of fact as to the bad faith nature of Boman's conduct.

Nonetheless, the above admissible evidence must be viewed in the context of certain provisions found in the June 23, 2009, settlement agreement entered into between the parties and submitted into evidence by Boman.

In this regard, it must first be noted that, as partners, each owed a fiduciary duty to the other. (See Corp. Code, § 16404, subd. (c).) Additionally, the settlement agreement was a contract which carried with it the implied covenant of good faith and fair dealing. (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230.) "The covenant is read into contracts and functions '"as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract."' [Citation.] The covenant also requires each party to do everything the contract presupposes the party will do to accomplish the agreement's purposes. [Citation.] . . . [A] 'breach of a specific provision of the contract is not . . . necessary' to a claim for breach of the implied covenant of good faith and fair dealing [citation]." (*Id*. at p. 1244.)

The present settlement agreement provided, in pertinent part: "The parties desire to settle that litigation and therefore enter into this agreement. [¶] . . . [¶] 4. The principal and all accrued interest will be paid to Morris upon the sale of the subject real

property, through the sale escrow. [¶] 5. Should the sale proceeds be insufficient to pay off the then outstanding principal and interest owed by Boman to Morris, the parties agree that Boman will have five years from the close of that escrow to pay off the balance. . . . [¶] 6. The parties will execute all necessary documents to carry out the intent of this Agreement, including instructions to escrow to have the principal and interest paid to Morris out of the escrow on the sale of the subject property. [¶] . . . [¶] 12. The parties agree to cooperate in the listing and sale of the property."

From these provisions, it can be gleaned that the basic benefits to be reaped from the agreement were threefold: (1) Both parties wished to settled the litigation; (2) Morris wanted to be repaid the monies that were owing him; and (3) Boman desired to have the proceeds of the sale repay the bulk, if not all, of what was due and owing Morris.

Applying the above legal principles to the present situation, we have admissible evidence that: "Boman told me that the only way he would accept the offer I had obtained and sign the necessary sale paperwork was if the Morris Co. released him of his debt to it." While Boman may well have had a legitimate and good faith reason for not signing the necessary sales paperwork, we believe that his failure to do so, in conjunction with: (1) the fiduciary relationship running between partners, (2) the specific contract provisions dealing with cooperation and the signing of sales documents construed in light of the implied covenant of good faith, and (3) the fact that his refusal to sign the necessary documents occurred within a short time after the signing of the settlement

18

agreement, are sufficient to raise a triable issue of fact that Boman's failure to sign the necessary sales documents in the absence of being released of liability was in bad faith.

As for the notion that Boman's conduct created the imminent risk that Morris would declare bankruptcy or be financially ruined, the record is devoid of evidentiary support. Throughout his declaration Morris indicates that the $700,000 payment was due and that the bank was threatening foreclosure. The only statement bearing upon the issue of financial ruin is: "Morris Co. and I believed it had no choice but to give in unwillingly to Boman's release demand because otherwise the Morris Co. *would face foreclosure* by the Bank and a *large deficiency judgment* against it that we should be left to bear on our own." (Italics added.)

While not dealing with a motion for summary judgment, the court in *Kim v. Westmoore Partners, Inc*. (2011) 201 Cal.App.4th 267, 280 and 281 addressed the need for evidentiary support relative to the issue of financial hardship. "Jennings's declaration . . . amounts to nothing more than a conclusory assertion his 'anxiety, depression, and financial hardships' caused the Westmoore defendants to be 'dilatory in answering [the] lawsuit.' He offers no *evidentiary* facts about either his emotional or financial state . . . ." Here, Morris states that he would face a "large deficiency judgment." He does not state, however, the amount owing on the loan or any facts relative to his financial condition.

19

There is no evidentiary showing as to the financial toll a deficiency judgment would cause.[5]

Lastly, Morris failed to present evidence that a reasonably prudent person in his position had no reasonable alternative other than releasing Boman from his debt. Stated another way, there is no evidence that the only reasonable alternative Morris had to avoid financial ruin, was to release Boman from his debt. "When a party pleads economic duress, that party must have had no 'reasonable alternative' to the action it now seeks to avoid (generally, agreeing to a contract). If a reasonable alternative was available, and there hence was no compelling necessity to submit to the coercive demands, economic duress cannot be established." (*CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 644.) Here, the evidence submitted by Morris was that: a $700,000 payment was due the bank on March 1, 2010; the bank was threatening foreclosure; a reasonable offer of $6.50 per square foot had been received two weeks before the March 1 date; the only way Boman would accept the offer is if Morris released him from the debt; Morris did not feel confident that the buyer would wait for him to sue Boman for his signature; and he had no choice but to sign the release.

There simply is no evidence from which to assess whether a reasonable person in Morris's shoes had a reasonable alternative other than releasing Boman. As previously

---

[5] It would appear from the paperwork submitted that as a result of the sale the loan was able to be paid off. There has been no showing that in fact it was likely that Morris would probably have sustained a deficiency judgment had the property been foreclosed upon.

indicated, there are no facts as to what the deficiency was. There is nothing as to the efforts Morris made to avoid the "necessity" of signing the release.

Further, the evidence appears to demonstrate that a reasonable alternative did exist and in fact was pursued by Morris. As is clear from the declaration of Mary Morris, the J. Arthur Morris Family Trust paid the money for purposes of getting the loan current. The sale of the property, at which time the release was to become effective, did not occur until two months later. Hence, a reasonable alternative was available and was pursued.

In short, we agree with the trial court's observations wherein it found: "The vague assertions of 'duress' in the declaration of Morris are insufficient to raise" factual issues on the required elements of the economic duress defense.

## IV. DISPOSITION

The judgment is affirmed. Each party to bear their respective costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.


We concur:

RAMIREZ
P. J.

MILLER
J.

21