Filed 4/7/21; modified and certified for publication 4/20/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TRUCK INSURANCE EXCHANGE, | B302365 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV26702) |
| v. | |
| FEDERAL INSURANCE COMPANY, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge. Affirmed.

Chamberlin & Keaster, Kirk C. Chamberlin and Michael C. Denlinger for Defendant and Appellant.

Pia Anderson Moss Hoyt, Scott R. Hoyt and John P. Mertens for Plaintiff and Respondent.

———————————

# INTRODUCTION

Appellant asks us to reverse the trial court's order denying its special motion to strike a civil complaint for fraud as a strategic lawsuit against public participation under Code of Civil Procedure section 425.16. Appellant also asks that we reverse the trial court's order overruling its evidentiary objections.

We affirm both orders.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

We recite only the facts relevant to the issue before us. Since 1986, more than 30,000 plaintiffs have filed lawsuits against Moldex-Metric, Inc. (Moldex), alleging Moldex manufactured defective air respirators and masks that failed to protect them from exposure to silica, asbestos, and other hazardous substances, leading to bodily injury.

Moldex gave notice of the lawsuits to its primary liability insurers, which provided indemnity and coverage for Moldex's defense of the lawsuits until the year 2003, when the primary liability policies' limits were exhausted. Moldex then gave notice of the lawsuits to its excess and umbrella liability insurers— namely, appellant Federal Insurance Company (Federal) and First State Insurance Company (First State)—which began to indemnify and defend Moldex in the lawsuits.

On December 20, 2004, Moldex discovered that it was additionally insured under a primary liability policy issued by Truck Insurance Exchange (Truck) and sought coverage from

Truck.[1]  Federal and First State sought contribution from Truck for the indemnity and defense fees they had already paid under their respective umbrella policies.  As a result, litigation ensued between Truck, Federal, and First State over coverage and the extent to which Truck was obligated to reimburse Federal and First State for payments made for Moldex's defense and indemnity, plus interest.

B.    *Case #1:  Federal's Reimbursement Action*

On September 20, 2007, Federal filed a complaint for contribution, reimbursement, and declaratory relief against Truck, First State, and Moldex, in Los Angeles Superior Court case No. BC377842.  Federal alleged it "undertook Moldex's defense" and indemnified Moldex "*without reservation* pursuant to the terms of the Federal policy,"[2] a copy of which was attached as an exhibit to the complaint.  However, "in light of the existence of available and unexhausted primary insurance," Federal believed it had "no duty to defend and no duty to reimburse defense costs" incurred by Moldex.  "[A]s the Truck policy is a primary policy and the Federal policy is an umbrella policy, it is the Truck policy that should have responded to [Moldex's] actions."  As such, Federal alleged it had no obligation to pay

---

[1]    "The Truck Policy was lost, and it was not until . . . December 2004 that Moldex uncovered evidence of its existence."

[2]    It appears Federal defended Moldex under its umbrella/excess policy without ever issuing a reservation of rights letter denying it had a duty to do so.  The only reservation of rights letter submitted by Federal addressed a Federal *primary* policy.

3

"*unless and until the Truck policy has properly exhausted*." Federal sought reimbursement from Truck for approximately $4.5 million in defense costs and $98,945 in indemnity costs, plus interest thereon.

Truck filed an answer denying the allegations contained in Federal's complaint. It asserted 38 affirmative defenses, including the following as and for its 23rd defense: "To the extent that Moldex and/or Federal voluntarily paid, assumed an obligation to pay, or incurred an expense without notice and approval by Truck, Truck has no obligation to Moldex and/or Federal for any such payment, obligation or expense." (Some capitalizations omitted.)

Following years of litigation, in February 2013, the court entered judgment against Truck, awarding approximately $6 million to Federal ($3,854,391 in defense costs plus $1,992,058 interest and $98,213 in indemnity costs plus $56,835 interest). The court found Federal had paid and/or reimbursed "the defense costs Moldex incurred after December 20, 2004 *under an umbrella policy*." The court found Truck had a duty to defend Moldex in the lawsuits pursuant to its *primary liability policy* upon Moldex's December 20, 2004 notice to Truck about the lawsuits. The court further found Truck had a duty to reimburse Federal and First State for all payments each had made for Moldex's defense and indemnity costs incurred between December 2004 and June 2011.

Truck filed an appeal from the February 2013 judgment in this court (Case No. B248065).

C.    *Settlement Agreement and Release*

While Truck's appeal was pending, Truck, Federal, and First State reached a "settlement agreement and release" signed

4

July 24, 2013. Per the terms of the settlement, Truck agreed to pay Federal the total amount of $4,858,700 for the defense and indemnity costs. Truck agreed to "continue to defend and indemnify Moldex . . . until such time as Truck establishes that it has properly exhausted the Truck Policy," in which case "Truck agrees to work with Moldex, Federal, and First State to ensure an orderly transition of the defense." Additionally, Truck agreed to file a request for an order of dismissal of its pending appeal, with prejudice and without costs, within five days.

"In consideration of all of the terms of this Agreement . . . , *the Parties each release[d] each other from any and all Claims* that are, were or could have been asserted in the Action." (Italics added.) However, the agreement carved out an exception: the releases set forth "shall not apply to, have any effect on or constitute a release" of "any of Truck's rights to claim contribution for any indemnity paid over its limit and defense fees incurred therewith," to the extent such rights exist. The releases were not "intended to, nor shall be construed to, release, waive or otherwise affect the Parties' rights and obligations under th[e] Agreement." And finally, each party "represent[ed] and warrant[ed] that . . . this Agreement has been . . . executed and delivered in good faith, and for . . . valuable consideration."

Truck thereafter dismissed its pending appeal.

## D.    *Case #2:  Truck's Reimbursement Action*

In January 2014, Truck filed a complaint against Federal, First State, and Moldex that included a cause of action for reimbursement and/or contribution of defense fees and indemnity payments Truck made post-exhaustion of its primary policy's limit (Los Angeles Superior Court Case No. BC534069). Truck

5

sought to establish that its primary policy's limit was exhausted in July 2013.

Litigation continued for some time. In May 2017, the Court of Appeal reversed the trial court's determination that Truck's primary policy had not exhausted, and found it was indeed exhausted on July 24, 2013 (Case No. B272378). On remand, Truck sought to recover from Federal and First State the defense fees it paid after its primary policy was exhausted. It was at this point that Federal raised *for the first time* that it never had a duty to defend Moldex and had only *voluntarily* done so as a business decision.

More specifically, via a declaration filed on December 1, 2017 in support of Federal's motion for summary adjudication "re: the duty to defend post July 24, 2013 expenses," Federal revealed it had "made [a] business decision, *at its option*, *to exercise its right to associate in the defense* of the Underlying Lawsuits and began to defend." (Italics added.) Because it had no duty to defend, Federal argued it could not be liable for contribution and refused to reimburse Truck.

The trial court agreed with Federal and entered judgment against Truck. We were not provided a copy of the complaint, order, or resulting judgment; however, the parties' briefing provides the trial court found the language set forth in Federal's umbrella policy did not impose on Federal a duty to defend and, instead, afforded Federal the right to associate in the defense. Truck appealed from the judgment, and its appeal is currently pending before Division 5 of this Court of Appeal (Case No. B298906).

6

E.    *Case #3:  Truck's Fraud Action*

For purposes of this appeal, on July 30, 2019, Truck filed a civil complaint against Federal in Los Angeles Superior Court for "fraud perpetrated by Federal in support of its efforts to obtain contribution for amounts it paid to defend Moldex."  Truck claimed it was fraudulently induced to execute the July 24, 2013 settlement agreement due to Federal's failure to disclose that its payment of Moldex's defense fees and indemnity costs was the result of a voluntary business decision.

We summarize the allegations set forth in Truck's complaint:  Federal made statements in case #1 (i.e., Federal's reimbursement action) in a manner so as to conceal the fact that Federal made a *voluntary* business decision to pay the defense fees without any duty under its policy to do so.  Federal represented to the court and named parties that it paid the defense fees "under its policy" and "pursuant to" its policy, as though it paid defense fees in satisfaction of its duty to defend Moldex.[3]  For instance, in its motion for summary adjudication filed November 2009, Federal argued it "defended and indemnified [Moldex] pursuant to an excess policy of insurance." Federal made no mention that it had voluntarily opted to make the payments, as a business decision.

---

[3]    California law does not require one insurer to contribute to and/or reimburse another insurer who made a voluntary payment.  (See *Morgan Creek Residential v. Kemp* (2007) 153 Cal.App.4th 675, 684–685; see *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.* (2009) 175 Cal.App.4th 183, 199; see also Civ. Code, § 1432.)

7

Truck posited: "[H]ad Federal taken the position in [case #1] that it was not obligated to pay the Defense Fees, it would have immediately lost the . . . Action and been denied a reimbursement judgment against Truck." Truck further posited: "Had Federal acknowledged its payments were voluntary before July 24, 2013, rather than in December 2017, Truck would not have entered into the Settlement, nor paid Federal nearly five million dollars thereunder." Truck alleged the February 2013 judgment and July 2013 settlement agreement were not entered in good faith and were obtained via Federal's "knowingly false statements" and "fraudulent omissions." As a result, Truck claimed both should be deemed void.

Truck requested general, compensatory, and consequential damages in the amount of $4,858,700 (plus interest from July 24, 2013 to date of judgment), punitive and exemplary damages, and reasonable attorney fees and costs.

F.    *Federal's Special Motion to Strike the Complaint*

On August 29, 2019, Federal filed a special motion to strike Truck's complaint as a strategic lawsuit against public participation under the anti-SLAPP statute, citing Code of Civil Procedure[4] section 425.16. Federal also requested an attorney fees award should it prevail on its motion.

Federal argued Truck's complaint for fraud is based on Federal's "acts in furtherance of its right to petition" and are thus protected speech pursuant to section 425.16, subdivisions (e)(1) and (e)(2). Federal also argued that Truck cannot show a

---

[4]    All further undesignated statutory references are to the Code of Civil Procedure.

8

probability of prevailing on its fraud claim because (1) it is barred by the litigation privilege, pursuant to Civil Code section 47; (2) the July 2013 settlement agreement included a release of all past, present, and future claims against Federal; and (3) Truck cannot sue for damages where the basis is fraud in the inducement. Federal claimed it did not act fraudulently, and that the "terms and conditions of the umbrella policy were in plain sight" as Federal had provided a copy of the policy as Exhibit "A" to its complaint in case #1. Moreover, Federal noted how Truck had asserted the affirmative defense that Federal's defense payments were voluntary "but did not pursue this defense in that litigation."

Truck opposed Federal's anti-SLAPP motion and provided a declaration from its counsel and supporting exhibits. Federal filed objections to the evidence submitted by Truck in its opposition.

Meanwhile, while the anti-SLAPP motion was pending, Truck filed a First Amended Complaint (FAC), asserting three causes of action: 1) fraud; 2) unjust enrichment; and 3) constructive trust. The record before us does not include a copy of the FAC.

G.     *Trial Court's Ruling*

On September 30, 2019, Federal's anti-SLAPP motion was argued and denied. No court reporter was present and no settled statement is part of the record on appeal.

As to the first prong, the court found Federal had met its burden to show that Truck's complaint arises from acts in furtherance of Federal's right of petition or free speech, i.e., Federal's conduct in connection with the litigation and resulting settlement of the underlying reimbursement action. As to the

9

second prong, the court found Truck demonstrated a probability of prevailing on its claim for fraud. And finally, the court overruled all of Federal's evidentiary objections.

Federal timely appealed.

## DISCUSSION

A. *Standard of Review*

We review a trial court's ruling on a special motion to strike pursuant to section 425.16 under the de novo standard. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) "In other words, we employ the same two-pronged procedure as the trial court in determining whether the anti-SLAPP motion was properly granted." (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1652.) We consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) In considering the pleadings and declarations, we do not make credibility determinations or compare the weight of the evidence; instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

We review a trial court's ruling on evidentiary objections by applying an abuse of discretion standard. (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 226.) As the party challenging the court's decision, Federal bears the burden to establish such abuse, which we will find only if the

10

trial court's order "exceeds the bounds of reason."  (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679.)

B.     *Applicable Law*

Section 425.16 provides, inter alia, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)  An " 'act in furtherance of a person's right of petition or free speech' " is defined in section 425.16 to include, in relevant part:  "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  (§ 425.16, subds. (e)(1) & (e)(2).)  "[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2), if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation."  (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266.)

The Legislature enacted section 425.16 to prevent and deter "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  (§ 425.16, subd. (a).)  Thus, the purpose of the anti-SLAPP law is "not [to] insulate defendants from *any*

11

liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

When a party moves to strike a cause of action under the anti-SLAPP law, a trial court evaluates the special motion to strike by implementing a two-prong test: (1) has the moving party "made a threshold showing that the challenged cause of action arises from protected activity" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*)); and if it has, (2) has the non-moving party demonstrated that the challenged cause of action has " 'minimal merit' " by making "a prima facie factual showing sufficient to sustain" a judgment in its favor? (*Baral*, *supra*, 1 Cal.5th at pp. 384–385; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 93–94 (*Navellier*); see also § 425.16, subd. (b)(1)). Thus, after the first prong is satisfied by the moving party, "the burden [then] shifts to the [non-moving party] to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral*, at p. 396.)

C.     *Absence of a Reporter's Transcript*

The record on appeal does not include a settled statement or agreed statement as authorized by California Rules of Court, rules 8.163 and 8.137. The September 30, 2019 minute order does specify that Federal's anti-SLAPP motion was called for hearing and "argued" before the court made its ruling.

Affirmance of the order appealed from may be warranted in the absence of a reporter's transcript when such a transcript is necessary for meaningful review. (See, e.g., *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187 [appeal requiring consideration of testimony could not proceed in

12

the absence of a reporter's transcript or a settled statement].) As a result, Federal cannot rely on errors at the September 30, 2019 hearing unless the claimed error appears on the face of the record before us. (Cal. Rules of Court, rule 8.163; see, e.g., *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 [declining to review the adequacy of an award of damages absent a reporter's transcript or settled statement of the damages portion]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447–448 ["The absence of a record concerning what actually occurred at the trial precludes a determination that the trial court abused its discretion"].)

However, because we review the denial of an anti-SLAPP motion de novo and must conduct an independent analysis of our own, we can resolve the appeal from the ruling on Federal's special motion to strike in the absence of a reporter's transcript. "While a record of the hearing would have been helpful to understand the trial court's reasoning, it is not necessary here where our review is de novo and the appellate record includes the trial court's written orders and all . . . materials germane to Appellant['s] motion." (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 933; *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 696.) The absence of a reporter's transcript is not fatal to Federal's appeal of the court's denial of its anti-SLAPP motion.

The same, however, cannot be said for Federal's appeal of the trial court's order overruling its evidentiary objections, which Federal contends was "prejudicial error." The cardinal rule of appellate review is judgments and orders of the trial court are presumed correct and prejudicial error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The appellant—in this case, Federal—has the burden of providing an adequate record, and the failure to provide an

13

adequate record for meaningful review requires the issue to be resolved against the appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.)

We do not know what took place at the September 30, 2019 hearing where the parties "argued" prior to the court's ruling on the pending matters. In its opening and reply briefs, Federal recites Evidence Code sections 1400 and 1401 regarding authentication, conclusively states that the exhibits attached to Truck's opposition were "not properly authenticated" and should not have been considered, and contends the trial court committed "prejudicial error" by overruling its objections. Without more, we cannot undertake a meaningful review of the basis of the trial court's decision. We do not know what took place during the September 30, 2019 hearing, and Federal's minimal argument does not meet the threshold of affirmatively showing error by the court. We see no abuse of discretion; the trial court's ruling on Federal's evidentiary objections is affirmed.

D. *The FAC is Not Relevant to Our Review of the Anti-SLAPP Motion*

On appeal, Truck contends that while filing the FAC did not moot Federal's anti-SLAPP motion, "it does a*ffect* it." As such, Truck argues Federal's failure to include the FAC in the record is "an error which costs it the appeal."

Truck is mistaken. The FAC is not the operative complaint for purposes of Federal's anti-SLAPP motion; indeed, the FAC was not even filed until *after* the filing of the anti-SLAPP motion. " 'A plaintiff . . . may not seek to subvert or avoid a ruling on an anti-SLAPP motion by amending the challenged complaint . . . in response to the motion.' " (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 411.) Thus, the FAC is not relevant to our

14

review and Federal's failure to include it in the record before us does not affect its appeal.[5]

E.     *Prong 1*: *Arising from Protected Activity*

Federal's initial burden at step one is to show that Truck's complaint for fraud arises from Federal's protected activity. (*Park*, *supra*, 2 Cal.5th at p. 1061.)

There is no question that filing documents in court is petitioning activity protected by section 425.16, subdivision (e). (See *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 [" '[t]he constitutional right to petition . . . includes the basic act of filing litigation' "]; *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 766 [same].)  Plainly read, the statute "encompasses any cause of action against a person arising from any statement or writing made in, or in connection with, an issue under consideration or review by, an official proceeding or body." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113.)

In determining whether a mixed cause of action (meaning, one containing allegations of both protected and non-protected activity) is subject to the anti-SLAPP statute, we examine whether the *principal thrust or gravamen* of the cause of action targets protected activity.  (*Okorie v. Los Angeles Unified School*

_____

[5]     In the same vein, we find *Oakland Bulk and Oversized Terminal, LLC v. City of Oakland* (2020) 54 Cal.App.5th 738 inapposite. In that case, the trial court sustained a demurrer with leave to amend and then deferred a ruling on the pending anti-SLAPP motion directed to the complaint that was the subject of the sustained demurrer.  (*Id.* at p. 748.)

15

*Dist.* (2017) 14 Cal.App.5th 574, 586–587 (*Okorie*); *City of Colton v. Singletary, supra,* 206 Cal.App.4th at p. 767.) " ' "We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.] If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." ' " (*Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, 1520.) In making this inquiry, courts "look to see whether the essence or 'bulk' of the cause of action is based on protected activity." (*Okorie*, at p. 587.) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at pp. 1062).

Our independent review of the pleadings and the supporting declarations discloses Truck's complaint for fraud is based on conduct that is protected activity.

Truck's complaint alleged its cause of action for fraud arises from Federal's positions taken in Federal's reimbursement action (case #1, BC377842) leading up to the February 2013 judgment, and during the negotiations leading up to the July 2013 settlement agreement and release. Truck' complaint specifies Federal's "pleadings, motions and briefs" represented it paid Moldex's defense fees "under its policy" or "pursuant to the terms of the Federal policy." Truck's complaint further specified that this conduct by Federal amounted to fraudulent omissions and misstatements, as Federal concealed the fact that it defended Moldex as a voluntary decision until its filing of the declaration in Truck's reimbursement action (case #2, BC534069) in December 2017. Based on the foregoing, we find the principal

16

thrust or gravamen of Truck's fraud cause of action is based on Federal's protected activity.

Truck argues *C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688 (*Howe*) controls. We do not agree, especially as that case discusses an anti-SLAPP motion challenging causes of action for express indemnity and equitable indemnity—not fraud. (*Id.* at pp. 695–696.) Further, there currently is a split of authority whether an action to enforce an indemnification obligation is even subject to the anti-SLAPP statute. (Edmon et al., Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 7:814; see *Long Beach Unified School Dist. v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87, 97–100 & fn. 7 [indemnity claims arose from protected activity of filing underlying lawsuit]; cf. *Howe*, at p. 701 [wrongful act giving rise to indemnity claim was not filing of underlying action, but refusal to honor contractual indemnification obligation]; *Wong v. Wong* (2019) 43 Cal.App.5th 358, 365 [defendant was not sued for pursuing earlier litigation, but for breaching its obligation to indemnify plaintiff for expenses incurred in that litigation].)

Based on the foregoing, we find the first prong of the two-step anti-SLAPP analysis is satisfied.

F. *Prong 2: Probability of Prevailing on the Cause of Action*

Federal contends the trial court erroneously found that Truck met its burden to establish a probability of success on the merits. We disagree.

First, Federal argues Truck's claim for fraud is barred by the litigation privilege. The litigation privilege is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Flatley v. Mauro* (2006) 39 Cal.4th

17

299, 323.) Accordingly, we must first determine whether the litigation privilege applies; if it does not, then we proceed with determining whether Truck has shown that its fraud cause of action has the requisite minimal merit.

    1.    ***Litigation Privilege***

Civil Code section 47 provides an absolute privilege for communications made in any legislative, judicial or other official proceeding authorized by law, or in the initiation or course of any other proceeding authorized by law. (*Id.*, subd. (b).) Thus, Truck cannot establish a probability of prevailing if the litigation privilege precludes a finding of liability on its claim for fraud.

The principal purpose of the litigation privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of harassment in subsequent derivative actions. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).) The privilege is "not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen*, *supra*, 37 Cal.4th at p. 1057.)

Federal argues "everything which Truck relies upon [for its fraud claim] occurred during the prosecution and/or settlement negotiations" of case #1. Federal contends Truck's reliance on Federal's conduct "involv[ing] court-related events" triggers the litigation privilege and precludes Truck's claim for fraud. Federal also argues application of the litigation privilege to

18

Truck's complaint "promotes the important public policy of enhancing the finality of judgments and avoiding unending post judgment derivative litigation."

Truck, on the other hand, argues the litigation privilege does not apply as this is a case of extrinsic fraud.  (See *Silberg*, *supra*, 50 Cal.3d at p. 214 [litigation privilege is absolute "except in the most narrowly circumscribed situations, such as extrinsic fraud"].)  Thus, we must determine whether the fraud alleged in Truck's complaint is extrinsic.  If we find Federal induced Truck to enter the July 2013 settlement agreement via extrinsic fraud, then the litigation privilege does not apply and Truck has satisfied the second prong, that is, it has successfully demonstrated the requisite minimal merit for its fraud claim.  (*Navallier*, *supra*, 29 Cal.4th at p. 94 [claims with the requisite minimal merit may proceed].)

2.   ***Fraud***

"Fraud is extrinsic where the defrauded party was deprived of the opportunity to present his or her claim or defense to the court, that is, where he or she was kept in ignorance or in some other manner, other than from his or her own conduct, fraudulently prevented from fully participating in the proceeding."  (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068.)  In contrast, fraud is "intrinsic if a party has been given notice of the action and has not been prevented from participating therein, that is, if he or she had the opportunity to present his or her case and to protect himself or herself from any mistake or fraud of his or her adversary, but *unreasonably* neglected to do so."  (*Id*. at p. 1069, italics added.)

19

Federal argues Truck's allegations of purported fraudulent conduct by Federal are examples of intrinsic fraud. First, Federal contends its conduct could not possibly be fraudulent as it had provided Truck with a copy of its umbrella policy in September 2007 (attached as Exhibit "A" to its complaint). "The fact that Truck failed to read the clear and unambiguous terms of the Federal Umbrella Policy is not the fault of Federal." Next, Federal contends Truck had asserted the affirmative defense that Federal's defense/indemnity payments were voluntary but "failed to utilize the liberal discovery tools available to it in ferreting out the 'fraud.'" Finally, Federal argues Truck "released the claim for which it now seeks damages" by signing the July 2013 settlement agreement, which contains a broad release of all claims, known and unknown, past, present, and future.

We find these arguments unavailing. Federal is correct that Truck was provided a copy of the Federal umbrella policy as early as September 2007 and had asserted as an affirmative defense but failed to "ferret[] out" via discovery whether Federal's payments of Moldex's defense was voluntary. However, as mentioned, intrinsic fraud only occurs when a party had the opportunity to present their case or to protect themselves from fraud by the opposing party "but unreasonably neglected to do so." (*In re Marriage of Stevenot*, *supra*, 154 Cal.App.3d at p. 1069.) Accepting Truck's evidence as true and evaluating the moving party Federal's evidence only to determine if it has defeated Truck's evidence as a matter of law, we cannot say that Truck *unreasonably* neglected to determine whether Federal was making a voluntary business decision or acting under its policy. These are arguable issues to be decided by the trier of fact and we do not believe any argument is precluded as a matter of law.

Federal had expressly averred *in its September 2007 complaint* that it defended Moldex pursuant to the terms of its umbrella policy, and the trial court thereafter ruled in the resulting judgment that Federal had "paid and/or reimbursed . . . the defense costs Moldex incurred after December 20, 2004 *under an umbrella policy*." Furthermore, Federal had indicated in its September 2007 complaint that it undertook Moldex's defense "*without reservation*" and stated it had no obligation to pay "*unless and until the Truck policy has properly exhausted*." Thus, Truck presented sufficient evidence (via its opposition to the anti-SLAPP motion) that it was induced to enter the July 2013 settlement agreement due to extrinsic fraud by Federal. We accept Truck's evidence as true. (*Soukup, supra*, 39 Cal.4th at p. 269, fn. 3.)

Here, a factfinder considering all the circumstances could reasonably conclude that when Truck signed the July 2013 settlement agreeing to pay nearly $5 million to Federal and to dismiss its pending appeal of the February 2013 judgment, it did so in reasonable reliance on Federal's course of conduct and Federal's stated position that it had a duty to defend Moldex pursuant to its policy. Moreover, Truck agreed to file a request for dismissal of its pending appeal, with prejudice, when it entered the settlement agreement, which further supports a finding of extrinsic fraud by Federal. "The essence of extrinsic fraud is one party's preventing the other from having his day in court." (*City and County of San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1067.)

21

And finally, for two reasons, Federal is mistaken in its belief that Truck "released the claim for which it now seeks damages" by signing the July 2013 settlement agreement. First, "a written release extinguishes any obligation . . . provided it has not been obtained by fraud, deception, misrepresentation." (*Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353, 1366.) We have already determined that Truck's evidence supports a prima facie factual showing of fraudulent conduct by Federal. Second, the settlement agreement itself specifically carved out an exception that the release "shall not apply to, have any effect on or constitute a release" of "any of Truck's rights to claim contribution for any indemnity paid over its limit and defense fees incurred therewith." Thus, Truck's reimbursement action (i.e., case #2)—where Federal submitted a declaration indicating its decision to defend Moldex was a voluntary business decision—falls squarely within the exception specified in the July 2013 settlement agreement and is not a claim for which liability was released.

Based on the foregoing, we find Truck has met its burden of showing a probability of prevailing on the merits of its fraud cause of action.

## DISPOSITION

The trial court's order overruling Federal's evidentiary objections is affirmed.  The order denying Federal's special motion to strike Truck's complaint for fraud is affirmed.  Costs are awarded to Truck.


STRATTON, J.

We concur:


GRIMES, Acting P. J.


WILEY, J.

23

Filed 4/20/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TRUCK INSURANCE EXCHANGE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FEDERAL INSURANCE COMPANY, <br><br> Defendant and Appellant. | B302365 <br><br> (Los Angeles County <br> Super. Ct. No. 19STCV26702) <br><br> ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION <br><br> [NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on April 7, 2021, be modified as follows:

On page 22 of the opinion, the first paragraph is deleted entirely and replaced with the following paragraph:

> And finally, Federal is mistaken in its belief that Truck "released the claim for which it now seeks damages" by signing the July 2013 settlement agreement. "[A] written release extinguishes any obligation . . . provided it has not been obtained by fraud, deception, misrepresentation." (*Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353, 1366.) We have already determined that Truck's evidence supports a prima facie factual showing of fraudulent conduct by Federal.

In addition, pursuant to rule 8.1105(b) of the California Rules of Court, the opinion, as modified, is ordered certified for publication in the Official Reports.

There is no change in the judgment.

_____
GRIMES, Acting P. J.        STRATTON, J.        WILEY, J.