Filed 3/4/26  Aquat 009 v. Fine CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AQUAT 009, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SCOT R. FINE et al.,<br><br>    Defendants and<br>    Respondents. | B330958<br><br>(Los Angeles County<br>Super. Ct. No.<br>21STCV18586) |

APPEAL from judgments of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed in part, reversed in part, and remanded.

NT Law and Julie N. Nong for Plaintiff and Appellant.

Ross, Wolcott, Teinert & Prout, Andrew G. Prout and Wei Liu for Defendants and Respondents Equity Trust Company Custodian FBO Bradley C. Stone SEO IRA, Chester Karrass, Michael Green, Nancy Jennifer Smith, Gary Karrass, Richard Brockway, Lynn Brockway and Tory Lynn Comfort.

Lewis R. Landau for Defendants and Respondents Scot R. Fine, Marquee Funding Group, Inc., and Platinum Loan Servicing, Inc.

————————————————

In 2019 Aquat 009, LLC, defaulted on a loan secured by a deed of trust on its property. Following a notice of foreclosure, Aquat and its lenders agreed to a loan modification pursuant to which the maturity date of the loan was extended by a year, and Aquat retained ownership of the property. One year later, Aquat again defaulted on the loan, and the property was sold at a trustee's sale.

Aquat sued its loan brokers (Scot Fine and Marquee Funding Group, Inc.), the loan servicer, the lenders, and the trustee, alleging wrongful foreclosure and related claims and seeking damages and/or cancellation of the deed of trust and notices of default and sale. Aquat also asserted causes of action for breach of fiduciary duty and related claims against the loan brokers, seeking statutory and tort damages. Aquat alleged its loan brokers altered the deed of trust after Aquat had signed it, but before it was recorded, to change the name of two of the lenders, Richard and Lynn Brockway. The initial deed of trust named the Brockways as "husband and wife as joint tenants"; the recorded deed of trust named them as trustees of the Lynn Brockway Living Trust.

The trial court sustained without leave to amend the demurrer filed by the lenders and the demurrer filed by the loan brokers and the loan servicer, and the court entered judgments of dismissal with respect to those defendants. Aquat appealed from the judgments.

The trial court did not err in sustaining the demurrers without leave to amend with respect to the lenders and the loan servicer. However, the court erred in sustaining the loan brokers' demurrer with respect to Aquat's causes of action against Fine and Marquee for breach of fiduciary duty and violation of Business and Professions Code section 17200. We therefore affirm the judgment of dismissal in favor of the lenders. We reverse the judgment of dismissal in favor of the loan brokers and loan servicer and remand for the trial court to enter a new judgment of dismissal with respect to only the loan servicer. We also direct the court to overrule the loan brokers' demurrer to the causes of action for breach of fiduciary duty and violation of Business and Professions Code section 17200 and to sustain the demurrer without leave to amend with respect to all other causes of action alleged against the loan brokers.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Loan and First Notice of Default*
In July 2018 Aquat procured a business loan through Fine and Fine's brokerage firm, Marquee. Fine and Marquee arranged for a group of private investors to loan $500,000 to Aquat to be secured by Aquat's real property. Aquat executed a promissory note and a deed of trust encumbering real property located at 1715 Selby Avenue, Los Angeles. The note, dated July 25, 2018, listed the lenders as Equity Trust Company Custodian FBO Bradley C. Stone SEP IRA; Chester Karrass, Trustee of the Karrass Living Trust; Michael Green and Nancy Jennifer Smith, as husband and wife as joint tenants; Gary Karrass, Trustee of the Gary Karrass Trust; Richard Brockway and Lynn Brockway,

3

as husband and wife as joint tenants; and Tory Lynn Comfort (collectively, the lender defendants). The note provided that Aquat would make monthly 10 percent interest-only payments for 11 months beginning in October 2018, with a balloon payment of the principal and last month's interest in September 2019. Payments were to be made to Platinum Loan Servicing, Inc., a loan servicer affiliated with Fine.

The deed of trust was dated July 25, 2018 and recorded with the Los Angeles County Recorder's Office on August 6, 2018. The recorded deed of trust named as beneficiaries the same entities identified as lenders in the note, with one exception: the note named "Richard Brockway and Lynn Brockway, as husband and wife as joint tenants," but the recorded deed of trust identified the Brockways as "Lynn Brockway and Richard Brockway, as Trustees, of the Lynn Brockway Living Trust Dated April 16, 2015." The recorded deed of trust named Platinum as the trustee.

On October 30, 2019, S.B.S. Trust Deed Network[1] initiated nonjudicial foreclosure proceedings pursuant to Civil Code section 2923.5 et seq.[2] and issued and recorded a notice of default. The notice of default listed the beneficiaries of the deed of trust on the recorded deed of trust, identifying the Brockways as trustees of the Lynn Brockway Living Trust. On February 13, 2020, S.B.S. recorded a notice of trustee's sale.

---

[1] The notice of default states S.B.S. "is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary."

[2] Further undesignated statutory references are to the Civil Code.

4

B. *The Loan Modification*

In early March 2020, prior to the scheduled trustee's sale, Aquat and Marquee, acting as the agent for the beneficiaries, agreed to a loan modification that extended the maturity date of the loan to September 2020.  The agreement, titled "Modification of Note and Deed of Trust Agreement" (the modification agreement), identified the subject of the agreement as the note dated July 25, 2018 and the deed of trust dated July 25, 2018 and recorded on August 6, 2018.  The modification agreement also identified the deed of trust by the instrument number assigned by the recorder's office.  Aquat's manager signed the modification agreement and initialed each page.

In section 1, titled "Reaffirmation of Obligations," the modification agreement stated, "Borrower further represents and warrants that it has no defenses or claims against Lender that would or might affect the enforceability of the Loan, including this Agreement, and that the Loan and documents that were executed in connection therewith remains in full force and effect, unless specifically modified herein."[3]  "Lender" was not specifically defined in the modification agreement, but is referenced as the entity that made the $500,000 loan to Aquat.  The "Loan" was defined to include the note and deed of trust.

In section 7, titled "Confirmation of Property and Deed of Trust," the modification agreement stated, "Borrower further acknowledges, agrees and confirms that Borrower's obligations to Lender under the Note are secured by the Deed of Trust."  This section was separately initialed by Aquat's manager.

---

[3]     Boldface and underlining in the agreement are omitted.

Section 9 of the modification agreement contained a general release, titled "Release of Lender," which stated, "As additional consideration for Lender's extension of the term of the Loan as set forth above, Borrower . . . does hereby relieve, release, discharge and forever hold harmless Lender and its respective . . . transferees, predecessors in interest, successors, assigns . . . and all persons acting by, through, under or in concert with any of them from any and all liability, demands, causes of action, accountings or claims of any nature arising out of the advertising, negotiation, disclosure, underwriting processing, making, settlement, servicing or any other aspects of the relationship between the parties concerning the Loan, known or unknown, suspected or unsuspected, arising since the Loan was applied for to the present. . . .  Borrower acknowledges such release includes a waiver of the right to make claims based upon the discovery of new facts and circumstances, and waives the application of any state or federal laws providing for relief from general releases."

The Release of Lender section continued, "Borrower hereby waives any provisions of state or federal law which explicitly or implicitly would prevent the application of this Modification Agreement to claims which Borrower does not know or suspect to exist in its favor any time on or prior to the date of executing this Modification Agreement which, if known by Borrower, would have materially affected Borrower's decision to execute this Modification Agreement.  Borrower expressly waives all rights afforded by any statute with respect to unknown claims, including, but not limited to, Section 1542 of the California Civil Code which limits the effect of a release with respect to unknown claims.  Borrower understands the significance of the release of

6

unknown claims and the waiver of statutory protection against a release of unknown claims (such as under Section 1542)."

The release then recited the text of section 1542 and continued, "Notwithstanding the above-stated provisions of section 1542 and for purposes of implementing a full and complete release and discharge, Borrower expressly acknowledges that this Modification Agreement is specifically intended to include in its effect, without limitation, all claims which Borrower has but does not or may not know or suspect to exist in its favor at any time on or prior to the date of execution of this Modification Agreement, and that this Modification Agreement extinguishes any and all such claim(s) and Borrower indicates that fact by signing its initials here." Aquat's manager signed her initials in the designated space.

C.    *The Second Notice of Default and Trustee's Sale*

On January 11, 2021 S.B.S again initiated nonjudicial foreclosure proceedings by issuing and recording a notice of default. On April 21 S.B.S. recorded a notice of trustee's sale. The property was sold in May 2021 to a third party at the trustee's sale.[4]

D.    *Aquat's Complaint and Second Amended Complaint*

On May 18, 2021 Aquat sued Fine, Marquee, and Platinum (collectively, the broker defendants), as well as the lender

---

[4]    The trial court granted the lender defendants' unopposed request for judicial notice of the trustee's deed upon sale recorded on June 1, 2021.

7

defendants.[5]  On October 21, 2022 Aquat filed the operative second amended complaint (complaint) alleging 11 causes of action:  (1) cancellation of a void deed of trust; (2) wrongful foreclosure; (3) declaratory relief; (4) violation of usury laws; (5) rescission of the "mortgage contract" (presumably the note); (6) breach of fiduciary duty; (7) violation of Business and Professions Code section 17200 et seq.; (8) negligence per se; (9) slander of title; (10) breach of contract; and (11) breach of the covenant of good faith and fair dealing.  The complaint alleged each of the causes of action against all defendants, except for the claim of breach of fiduciary duty, which was alleged against only Fine and Marquee.

Aquat alleged the deed of trust that its manager had signed in July 2018 listed the lenders as they were identified in the note, including the Brockways as husband and wife and joint tenants. Aquat attached to the complaint an unsigned copy of the deed of trust identifying the Brockways as husband and wife and joint tenants, which Aquat alleges was the copy that Aquat's manager signed and was notarized.[6]

---

[5]  The complaint also named S.B.S as a defendant.  On February 4, 2022 S.B.S. filed a declaration of nonmonetary status pursuant to section 2924*l* stating it had been named solely in its capacity as trustee and not due to any acts or omissions on its part.  Aquat did not object to the declaration, and S.B.S. has not participated in the litigation.

[6]  The second amended complaint attached several additional documents, including the 2018 recorded deed of trust; 2018 note; 2019 notice of default; 2020 notice of trustee's sale; 2020 modification agreement; 2021 notice of default; and 2021 notice of trustee's sale.

8

According to the complaint, Marquee altered the deed of trust after it was signed but before it was recorded to change the Brockways' designation to the Brockways as trustees of the Lynn Brockway Living Trust.  Aquat alleged the alteration was material and was done without its knowledge or consent, rendering the deed of trust void.  Aquat further alleged that when the loan was originated, Fine and Marquee failed to make required statutory disclosures and failed to disclose the alteration of the deed of trust.  The complaint sought rescission and/or cancellation of the deed of trust and the trustee's notices of default and sale, a declaration that the note could not be enforced, and statutory and tort damages.

E.    *The Demurrers*

The lender defendants demurred to the complaint, arguing the modification agreement barred Aquat from asserting causes of action regarding the enforceability of the deed of trust and that Aquat had released the lender defendants from any liability regarding the loan.  They further argued the alleged alteration of the deed of trust was not material and therefore had no effect on the validity of the deed of trust.

The broker defendants also demurred to the complaint. They joined in the arguments of the lender defendants regarding the alleged alteration of the deed of trust.  In addition, the broker defendants asserted as to the cause of action for breach of fiduciary duty and three other causes of action based on alleged failure to disclose that Fine and Marquee made all required disclosures to Aquat at the time the loan was originated.[7]

---

[7]    The broker defendants requested judicial notice of several documents containing disclosures that they argued were given to

9

The trial court sustained both demurrers without leave to amend. The court found the releases in the modification agreement barred Aquat's claims regarding the invalidity of the deed of trust. The court also found the alleged alteration of the deed of trust with respect to the Brockways was not material because there was no "legal distinction in between property owned by a revocable trust and property owned by the settlor of such revocable trust during the lifetime of the settlor."[8] Accordingly, the alleged alteration did not affect the validity of the deed of trust.

The trial court also sustained the demurrer by the broker defendants to the causes of action for breach of fiduciary, declaratory relief, violation of usury laws, and cancellation of the mortgage contract for failure to make required disclosures, explaining, "There are the loan disclosures given to and

---

Aquat when the loan was originated. The documents included the agreement to procure a loan, the mortgage loan disclosure statement, and the loan estimate. The broker defendants argued the trial court could take judicial notice of the existence and legal effect of the documents pursuant to Evidence Code section 452, subdivision (h).

[8]    In making this finding, the trial court cited *Carolina Casualty Ins. Co. v. L.M. Ross L. Group, LLC* (2010) 184 Cal.App.4th 196, 208 for the proposition there is no legal distinction between property owned by an individual and by the settlor of a revocable trust. Because we agree that Aquat's claims were barred by the release in the modification agreement, we do not reach whether the alleged alteration to the deed of trust was material under *Carolina Casualty*. However, we note there is nothing in the record to support the court's implied finding that the Lynn Brockway Living Trust was a *revocable* trust.

10

acknowledged by the borrower." Although the record does not reflect a ruling on the broker defendants' request for judicial notice, it appears from this statement that the court took judicial notice of the loan disclosure documents submitted by the broker defendants and found the disclosures were given, thus precluding Aquat's claims.

The trial court entered judgments in favor of the lender defendants and broker defendants. Aquat timely appealed.[9]

## DISCUSSION

A. *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Matthews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) When evaluating the complaint, "we assume the truth of the allegations." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209; accord, *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.) "'"'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'"'" (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.)

---

[9] In their brief on appeal, the broker defendants join the arguments raised by the lender defendants without presenting any additional argument. (See Cal. Rules of Court, rule 8.200(a)(5).)

11

B.	*The Modification Agreement Bars Aquat's Causes of Action Based on the Validity of the Deed of Trust*

Seven of the causes of action in the complaint are based on the theory that the deed of trust was void because the alteration of the deed of trust was material and made without Aquat's knowledge and permission.  Thus, Aquat argues, the lender defendants lacked authority to initiate the foreclosure because they did not hold a beneficial interest in the deed of trust.  These seven causes of action fail because Aquat released any claim that the recorded deed of trust was invalid.[10]

Aquat is correct that if the Brockways were not the beneficial holders of the recorded deed of trust, they would have lacked authority to direct the foreclosure on the property.  As the Supreme Court explained in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 927, the trustee named in the deed of trust may initiate a foreclosure proceeding "only at the direction of the person or entity that currently holds the note and the beneficial interest under the deed of trust—the original beneficiary or its assignee—or that entity's agent."[11]  Thus, "if the

---

[10]	The seven causes of action are for cancellation of the deed of trust, wrongful foreclosure, violation of Business and Professions Code section 17200, negligence, slander of title, breach of contract, and breach of the duty of good faith and fair dealing.  These causes of action fail as to all defendants with one exception—as we will discuss, the section 17200 cause of action states a valid cause of action as to Fine and Marquis based on allegations unrelated to the validity of the deed.

[11]	The court in *Yvanova v. New Century Mortgage Corp.*, *supra*, 62 Cal.4th at page 926 explained that a deed of trust on property securing a loan has three parties:  "the trustor (borrower), the beneficiary (lender), and the trustee."  Further,

borrower defaults on the loan, . . . '[o]nly the "true owner" or "beneficial holder" of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law.'" (*Id.* at pp. 927-928.) Accordingly, if the deed of trust were void, the lender defendants would not have had the authority to direct the trustee to commence nonjudicial foreclosure proceedings. (See *id.* at p. 929 ["[a] foreclosure initiated by one with no authority to do so is wrongful"].)

The flaw in Aquat's argument is that Aquat is bound by the modification agreement, in which it released its claims relating to the validity of the deed of trust. Aquat entered into the agreement as "good and valuable consideration" for a one-year extension of the maturity date of the note. As discussed, Aquat unambiguously agreed in section 1 "that it has no defenses or claims against the Lender that would or might affect the enforceability of the Loan" and that the "Loan" (defined as the note and recorded deed of trust) remained in full force and effect. And in section 7 Aquat agreed and confirmed that its obligations under the note were "secured by the Deed of Trust." Further, section 9 contained a general release in which Aquat agreed to release the lenders and their agents from any liability, causes of action, or "claims of any nature" arising out of the loan, known or unknown, with a specific waiver of section 1542.[12] Aquat's

---

"'[t]he trustee holds a power of sale. If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale.'" (*Ibid.*)

[12] Fine signed the modification agreement on behalf of Marquee as the "agent" for the lender defendants. Therefore, the release covered Marquee and Fine as agents of the lender

13

theories of liability based on the enforceability and validity of the deed of trust fall squarely within these releases and confirmation that the recorded deed of trust secured the note.

Aquat asserts multiple arguments for why the release language in the modification agreement is unenforceable. Its arguments are unavailing. First, Aquat argues the modification agreement was misleading because it did not disclose that the deed of trust had been altered to change the identity of the lenders (the Brockways). But Aquat fails to cite any authority for its contention the failure of the modification agreement to disclose this fact made it unenforceable. Aquat has therefore forfeited this contention. (See *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 ["""When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited]."""].)

Even if Aquat had not forfeited this argument, it lacks merit because the modification agreement did not, as argued by Aquat, "misrepresent[]" the identity of the lenders. To the contrary, the modification agreement defined the deed of trust as the document recorded on August 6, 2018, that is, the one that identified the Brockways as the trustees of the Lynn Brockway Living Trust.

Second, Aquat argues the releases in the modification agreement violate section 2953's prohibition on waiver of certain statutory rights. Section 2953 states: "Any express agreement made or entered into by a borrower at the time of or in connection with the making of or renewing of any loan secured by a deed of

---

defendants, at least with respect to allegations concerning the validity of the loan and deed of trust.

trust, mortgage or other instrument creating a lien on real property, whereby the borrower agrees to waive the rights, or privileges conferred upon the borrower by Sections 2924, 2924b, or 2924c of the Civil Code or by Sections 580a or 726 of the Code of Civil Procedure, shall be void and of no effect." We agree that section 2953 applies to the modification agreement because the agreement was entered into with respect to renewal of the note secured by the deed of trust. But Aquat has not explained how a release of liability for claims relating to the enforceability or validity of the deed of trust runs afoul of section 2953. The only section cited by Aquat as a waived statutory protection is section 2924, but Aquat provides no explanation for how that provision applies here, thereby forfeiting this contention as well.

Even if Aquat had not forfeited this contention, it lacks merit. Section 2924 provides that an "entity shall not record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest." (§ 2924, subd. (a)(6).) This section does not apply to the modification agreement because the agreement does not release Aquat's right to have the foreclosure proceedings initiated by the holder of the beneficial interest under the deed of trust. And Aquat does not allege the Brockways as trustees were not identified in the recorded deed of trust as the holders of a beneficial interest (they were). Rather, Aquat's contention is that the recorded deed of trust is void because it was materially altered from the initial signed deed of trust. This is precisely what the modification agreement released—any challenge to the validity of the deed of

15

trust—not, as barred by section 2924, whether the holders of the beneficial interest identified in the recorded deed of trust initiated the foreclosure process.

Finally, Aquat argues the modification agreement's waiver of section 1542 (stating a general release does not release unknown claims) is unenforceable because the agreement quotes an older version of section 1542, which did not place Aquat on notice that it was releasing its claims. The protections of section 1542 can be waived as long as the waiver is "'"clear, explicit and comprehensible in each [of its] essential details."'" (*Perez v. Uline, Inc.* (2007) 157 Cal.App.4th 953, 959.) The releases in the modification agreement clearly and explicitly stated the release of unknown claims applied to the borrowers.

The modification agreement recited the text of former section 1542, which was in effect through 2018. Section 1542 now reads, "A general release does not extend to claims that the creditor *or releasing party* does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor *or released party*." (§ 1542; see Stats. 2018, ch. 157, § 2.) (Italics added.) The quoted language in the modification agreement did not include the language "or releasing party" and "or released party."

Aquat contends the release language, by citing the earlier version of section 1542 that only refers to claims of creditors, was misleading because it "create[d] the impression that *only the lender* was releasing claims, while obscuring the fact that Aquat itself was also releasing potential claims." We are not persuaded. The preamble to Senate Bill No. 1431 explained that the statute was amended to "clarify that the terms 'creditor' and 'debtor' as

16

used in the above provisions include 'releasing party' and 'released party,' respectively." (Sen. Bill No. 1431 (2017-2018 Reg. Sess.) § 2.) But the preamble further stated the amendments "are declaratory of existing law." (*Id*. at § 3.) Aquat has cited no authority for the proposition that the prior version of section 1542 was limited to a release of only creditors' claims.

In addition, as discussed, the modification agreement explicitly stated the "Borrower" was releasing "claims which Borrower has but does not or may not know or suspect to exist in its favor" at the time it executed the agreement. There is simply no reasonable interpretation of this language other than that the borrower was waiving unknown claims. Moreover, "[n]othing in [section 1542] requires that it be designated in the release or that a party specifically waive its provisions." (*Perez v. Uline, Inc*., *supra*, 157 Cal.App.4th at p. 959.)

C.     *The Complaint Did Not Allege Facts Sufficient To State a Claim for Declaratory Relief or Rescission*

Aquat's third cause of action for declaratory relief and fifth cause of action for rescission rely on the alleged failure of all the defendants to disclose the alteration of the deed of trust and, with respect to Marquee and Fine, their failure to make required statutory disclosures in arranging the loan. Aquat seeks a declaration that the "mortgage contract" (which appears to be the note) cannot be enforced and that the "loan agreement is illegal, void, or voidable, and without legal consequence." In the rescission cause of action, Aquat seeks to rescind the "mortgage contract due to violation of broker license law." (Capitalization omitted.) Neither cause of action alleges sufficient facts to state a claim.

17

Declaratory relief is available to "[a]ny person interested under a written instrument . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . in cases of actual controversy relating to the legal rights and duties of the respective parties. . . ." (Code Civ. Proc., § 1060; see *Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728; *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 615.)

Section 1689, subdivision (b), provides that a party may rescind a contract "[i]f the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party."

To the extent Aquat seeks declaratory relief and rescission with respect to the lender defendants, the claims are barred by the release in the modification agreement of all claims regarding the enforceability of the note and deed of trust and the release of all liability arising from the "disclosure, underwriting, processing, making, settlement, servicing or any other aspects of the relationship between the parties concerning the Loan, known or unknown . . . ." Aquat does not dispute that the releases bar these claims against the lender defendants, instead asserting (as discussed) only that the modification agreement is not enforceable.

With respect to Marquee and Fine, the releases in the modification agreement bar Aquat's claims premised on the enforceability of the loan and deed of trust. But the releases do not bar Aquat's claims based on Marquee and Fine's failure to

18

make required disclosures or other unfair business practices. However, declaratory relief and rescission of the note and deed of trust are not appropriate remedies for the alleged omissions and breaches by the broker defendants (including Platinum).[13]  The note and deed of trust establish legal rights and duties between Aquat and the lender defendants.  There is no actual controversy regarding the legal rights and duties of the broker defendants under the note and deed of trust that would be the proper subject of declaratory relief.  (See Code Civ. Proc., § 1060.)  Further, because the broker defendants are not parties to the documents, Aquat cannot seek rescission based on the broker defendants' alleged wrongdoing.  (See *Schauer v. Mandarin Gems of California, Inc.* (2005) 125 Cal.App.4th 949, 959-960 ["Civil Code section 1689 limits grant of rescission rights to the contracting parties."].)

D.    *The Complaint Did Not Allege Facts Sufficient To State a Claim for Violation of the Usury Laws*

In the fourth cause of action for violation of the usury laws, Aquat alleges the broker defendants violated the usury laws by failing to return the commissions and fees they charged for arranging the loan, and the lender defendants owed Aquat a refund of the interest paid under the note.  Aquat has not alleged sufficient facts to support a cause of action for violation of the usury laws.

---

[13]    The complaint does not make specific allegations about Platinum in the causes of action for declaratory relief and rescission, but in any event, declaratory relief and rescission are not appropriate remedies with respect to any of the broker defendants.

As the Supreme Court explained in *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 798, "The California Constitution, article XV, section 1, states 'No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action.'  The essential elements of usury are: (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction."  (Accord, *WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 533.)

The complaint alleges that the defendants' conduct violated the usury laws, but it does not allege in what manner the defendants charged interest that exceeded the statutory maximum or otherwise violated the usury laws.  Moreover, Aquat fails in its opening brief to make any argument as to the sufficiency of this cause of action, forfeiting this argument.  (See *Broad Beach Geologic Hazard Abatement Dist. v. 31506 Victoria Point LLC* (2022) 81 Cal.App.5th 1068, 1093 ["failure to raise contention in opening brief constitutes forfeiture"]; *In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 372, fn. 3 [same].)

20

E. *The Complaint Adequately Pleaded Causes of Action for Breach of Fiduciary Duty and Violation of Business and Professions Code Section 17200 Against Fine and Marquee*

Aquat's sixth cause of action for breach of fiduciary duty is asserted only against Fine and Marquee.[14]  The complaint alleged facts sufficient to support a claim.  "A mortgage broker providing mortgage brokerage services to a borrower is the fiduciary of the borrower, and any violation of the broker's fiduciary duties shall be a violation of the mortgage broker's license law." (§ 2923.1, subd. (a); see *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 782 [the law "impose[s] upon mortgage loan brokers an obligation to make a full and accurate disclosure of the terms of a loan to borrowers and to act always in the utmost good faith toward their principals"]; *Smith v. Home Loan Funding, Inc.* (2011) 192 Cal.App.4th 1331, 1332.)  The Business and Professions Code also imposes several statutory obligations on a real estate broker who negotiates a loan to be secured by real property, including a duty to the borrower to disclose the amount of all fees and commissions.  (Bus. & Prof. Code §§ 10240, 10241.)  The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of the fiduciary duty, and

---

[14] The lender defendants point out in their respondents' brief that the breach of fiduciary duty cause of action was alleged only against Fine and Marquis, and they present no argument on this cause of action.  Similarly, the lender defendants only address their alleged violation of Business and Professions Code section 17200, without any mention of the broker defendants.  As discussed, the broker defendants join in the lender defendants' brief and present no separate arguments.

resulting damage.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

Aquat alleged Fine and Marquee were mortgage brokers involved in negotiating a loan on behalf of Aquat.  Aquat further alleged Fine and Marquee breached their fiduciary duties by failing to make required disclosures and by failing to inform Aquat that the deed of trust had been altered before it was recorded.  Aquat also alleged it was harmed by the alleged breach, in part because Fine and Marquee failed to refund their commissions as required by statute.  These allegations are sufficient to state a cause of action for breach of fiduciary duty.[15]

Aquat has likewise in the seventh cause of action alleged with respect to Fine and Marquee a cause of action for violation of the Unfair Competition Law (UCL) under Business and Professions Code section 17200.  "The UCL prohibits unfair competition, defined as 'any unlawful, unfair or fraudulent business act or practice.'  (§ 17200.)  The statute's 'purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'" (*Abbott Laboratories v. Superior Court* (2020) 9 Cal.5th 642, 651.) Business and Professions Code section 17200 "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." (*Korea Supply Co. v. Lockheed*

---

[15]    As discussed, we do not reach whether the alleged alteration of the deed of trust was material.  Fine and Marquee do not argue on appeal that they did not breach their fiduciary duties because the alleged alteration of the deed of trust was not material, thereby forfeiting any argument on this basis.  In any event, the alleged failure to disclose alteration of the deed of trust is only one of the alleged failures to disclose.

*Martin Corp.* (2003) 29 Cal.4th 1134, 1143; accord, *Cel-Tech Communications, Inc v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)  A practice that is unfair or fraudulent "may also be the basis for a UCL action even if the conduct is 'not specifically proscribed by some other law.'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1125; accord, *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.)

Aquat incorporated the alleged statutory violations by Fine and Marquis into its cause of action under Business and Professions Code section 17200, including the failure to disclose the altered deed and other required disclosures, thereby sufficiently alleging a cause of action for violation of section 17200.

F.    *The Trial Court Did Not Abuse Its Discretion in Denying Leave To Amend*

A trial court abuses its discretion by sustaining a demurrer without leave to amend where "'there is a reasonable possibility that the defect can be cured by amendment.'"  (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; accord, *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)  "'The plaintiff has the burden of proving that [an] amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal.'" (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132; see *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.)

Aquat has failed to explain how it could amend its complaint to allege legally sufficient causes of action against the lender defendants and Platinum or causes of action for

23

declaratory relief and rescission against the broker defendants. Aquat makes only conclusory statements regarding potential amendments, for example, arguing that it could allege "violations of California's COVID-19-related legislation," but it fails to describe what COVID-19 violations it could allege or how those violations would support specific causes of action. With respect to violation of the usury laws, Aquat argues only that a loan is usurious "when excessive fees are charged," but it fails to state what it could allege as to why the commissions or fees charged were excessive. Aquat also contends it could make additional allegations about the fraudulent alteration of the deed of trust, but, as discussed, the releases in the modification agreement bar the seven causes of action based on alteration of the deed of trust. Accordingly, there is no basis to reverse the trial court's denial of leave to amend.

## DISPOSITION

The judgment against the lender defendants is affirmed. The judgment against the broker defendants is reversed. The matter is remanded with directions for the trial court to vacate its order sustaining the broker defendants' demurrer as to all causes of action and to enter a new order overruling the demurrer with respect to the causes of action against Fine and Marquee for breach of fiduciary duty and violation of Business and Professions Code section 17200; sustaining the demurrer without leave to amend as to the remaining causes of action alleged against Fine and Marquee; and sustaining the demurrer without leave to amend as to all causes of action alleged against Platinum. The court is also to enter a new judgment in favor of Platinum. The

24

lender defendants are to recover their costs on appeal.  Aquat, Fine, Marquee, and Platinum are to bear their own costs.


                                        FEUER, J.

We concur:


        MARTINEZ, P. J.


        STONE, J.